IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRIDGETT ROBINSON-MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:18-cv-512-JTA |
| v. | ) | |
| | ) | (WO) |
| MONTGOMERY COUNTY BOARD | ) | |
| OF EDUCATION, ANN ROY | ) | |
| MOORE, ROBERT PORTERFIELD, | ) | |
| LISA KEITH, W. DURDEN DEAN, | ) | |
| ELEANOR DAWKINS, MARY | ) | |
| BRIERS, MELISSA SNOWDEN, | ) | |
| ARICA WATKINS-SMITH, PATRICK | ) | |
| NELSON, and JOHN JOHNSTON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

On May 21, 2018, Plaintiff Bridgett Robinson-Miller filed this action against the Montgomery County Board of Education ("MCBOE"), Ann Roy Moore, Robert Porterfield, Lisa Keith, W. Durden Dean, Eleanor Dawkins, Mary Briers, Melissa Snowden, Arica Watkins-Smith, Patrick Nelson, and John Johnston. (Doc. No. 1.) Plaintiff alleges violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*., ("FMLA"); violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); unlawful retaliation under FMLA and Title VII; violation of the Fourteenth Amendment right to equal protection; and state law claims of negligence and wantonness.

The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 29 - 33.) Before the Court are the parties' cross motions for summary judgment. (Docs. No. 123, 125.) Also before the Court is Defendants' motion for leave to amend their summary judgment brief. (Doc. No. 131.) After careful scrutiny of the record, the motions, and the parties' briefs, the Court concludes that Defendants' motion for leave to amend their summary judgment brief (Doc. No. 131) is due to be GRANTED, Plaintiff's motion for summary judgment (Doc. No. 123) is due to be DENIED, and Defendants' motion for summary judgment (Doc. No. 125) is due to be GRANTED.

## II.    JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction over Plaintiff's Title VII and FMLA claims pursuant to 28 U.S.C. § 1331. The Court exercises jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

## III.   FACTS[1]

Plaintiff is a certified elementary education teacher.[2] (Doc. No. 126-10 at 8.) On February 10, 2016, MCBOE hired Plaintiff as a substitute seventh grade math teacher to

---

[1] Unless otherwise specifically indicated, the parties do not dispute the facts set out in this Section of this Memorandum Opinion and Order.

[2] Plaintiff testified that her teaching certification is for "[e]lementary, but it can go up to the eighth grade." (Doc. No. 126-10 at 8.)

complete the school year for a teacher who was on maternity leave from McKee Junior High School ("McKee"). (Doc. No. 108 at 3; Doc. No. 124-1 at 1.) McKee serves students in sixth through eighth grade. (Doc. No. 126-16 at 10.) The number of students enrolled at McKee fluctuates from year to year; enrollment is currently around 730 students. (*Id.*)

Plaintiff worked at McKee as a substitute seventh grade math teacher until May 2016, when the 2015-16 school year ended. (Doc. No. 108 at 3.) In April 2016, Plaintiff received a letter notifying her that her contract would not be renewed for the following school year. (Doc. No. 124-2 at 1.) McKee's principal, Defendant Patrick Nelson, chose not to recommend renewal of Plaintiff's employment at that time because he did not know if he would have any available positions at McKee the following year that Plaintiff could fill. (Doc. No. 126-10 at 8.) However, in August 2016, Plaintiff was rehired for the 2016-17 school year, this time as a sixth-grade math intervention teacher. (Doc. No. 124-2 at 2-3, 14; Doc. No. 126-10 at 8.)

Vincent Johnson, a tenured teacher, also taught sixth grade math intervention at McKee. (Doc. No. 108 at 3; Doc. No. 126-15 at 4.) His classroom was next door to Plaintiff's sixth-grade math intervention classroom. (Doc. No. 108 at 4.) Plaintiff first met Johnson when she was introduced to the McKee staff in March 2016. (*Id.*) Plaintiff's only interaction with Johnson during the 2015-16 school year occurred at the end-of-the-year barbeque in May 2016, when Johnson asked her for her phone number. (*Id.*) In July 2016, Plaintiff and Johnson began texting each other about whether she had been hired back at McKee for the 2016-17 school year. (*Id.*)

Plaintiff alleges that, from August 3, 2016, to September 15, 2016, Johnson sexually harassed her through text messages, phone calls, and in-person comments. (*Id*.) Johnson's communications included flirtatious and sexual overtures, even after Plaintiff informed him that she was not interested in a sexual relationship with him because he was married. (Doc. No. 124-2 at 3-7.)

On Friday, September 16, 2016, Johnson entered Plaintiff's classroom and began looking at, touching, and commenting on the items on her desk. (Doc. No. 124-8 at 19-20.) Johnson also commented on Plaintiff's health and told Plaintiff that she "looked good." (Doc. No. 124-8 at 18, 20.) Although Johnson did not physically touch Plaintiff, she felt that he had entered too closely into her personal space. (Doc. No. 124-8 at 18-20.) Plaintiff "felt enough was enough." (Doc. No. 124-8 at 18.) She left the classroom to see the assistant principal, Melissa Williams. (*Id*.)

Plaintiff told Assistant Principal Williams "what had been going on," and she showed Assistant Principal Williams the text messages between Johnson and herself. (*Id*.) Assistant Principal Williams hugged Plaintiff and asked if Plaintiff would like for her to go get Monica Jackson, the seventh-grade science teacher, and Plaintiff agreed. (Doc. No. 124-8 at 18.) Jackson arrived and hugged Plaintiff, and then Defendant Nelson arrived. (Doc. No. 124-8 at 22.) Jackson asked Defendant Nelson if she could confront Johnson, and Defendant Nelson replied, "No. Ms. Jackson, we have to do this one by the book." (*Id*.) Defendant Nelson left the room, and Plaintiff followed him to his office, where she completed an incident form. (*Id*.; Doc. No. 108 at 4.) Defendant Nelson reported Plaintiff's

4

complaint about Johnson to Defendant John Johnston, the Human Resources Director for Montgomery Public Schools ("MPS"). (Doc. No. 108 at 4-5.)

The same day, September 16, 2016, Defendant Johnston instructed MPS Chief Investigative Officer Curtis Forte to investigate Plaintiff's sexual harassment complaint against Johnson. (Doc. No. 108 at 5.) On Monday, September 19, 2016, Johnson was placed on administrative leave pending the results of the investigation. (*Id*.) On Tuesday, September 20, 2016, Officer Forte interviewed Plaintiff. (*Id*.) Officer Forte completed the report of his investigation on Wednesday, September 21. (*Id*.)

After receiving Officer Forte's report, Defendant Johnston recommended to MCBOE that Johnson be placed on a three-day suspension and be given a letter of reprimand. (Doc. No. 108 at 5.) MCBOE approved the suspension, and, on October 4, 2016, Johnson was suspended for three days without pay. (*Id*.) Defendant Johnston provided the letter of reprimand to Johnson and told him "[n]ot to have any more communication with" Plaintiff. (Doc. No. 108 at 5; Doc. No. 124-12 at 12-13.)

Before Johnson returned to his teaching duties at McKee, Defendant Johnston spoke to Defendant Nelson about Johnson's expected return date and about what should happen at the school going forward. (Doc. No. 124-12 at 30.) Defendant Johnston told Defendant Nelson that Johnson and Plaintiff should have no further contact with each other, and that, if Johnson and Plaintiff did need to communicate, then a third party, preferably an administrator, should be present. (*Id*.)

In October 2016, Defendant Johnston called Plaintiff to his office. (Doc. No. 124-8 at 23-24.) He informed Plaintiff that Johnson had been reprimanded and that, when Johnson

returned to work, he should not say anything to her. (*Id*.) Defendant Johnston also told Plaintiff that, if she and Johnson needed to communicate, another teacher or an administrator should be present for their conversation. (*Id*.) Plaintiff requested to be transferred to a different school, and Defendant Johnston denied the request on grounds that MCBOE does not transfer teachers after the first twenty days of the school year.[3] (Doc. No. 108 at 5; Doc. No. 124-8 at 24; Doc. No. 124-12 at 19.) Plaintiff then asked if her class could be moved to another location that was not next door to Johnson's classroom, and that request was granted. (Doc. No. 124-8 at 24-25.) At some point after Plaintiff's classroom was moved to a new location on the McKee campus, the custodians did not clean Plaintiff's new classroom. (Doc. No. 124-8 at 25-27.)

When Johnson returned to his teaching duties at McKee, Defendant Nelson informed him that he was to have no further contact with Plaintiff. (Doc. No. 126-16 at 76). Despite this instruction, Johnson interacted with Plaintiff on three occasions. (Doc. No. 108 at 5.) Once, he said, "Good morning, Ms. Miller," as they passed each other entering the school. (*Id*.) Another time, he flicked his car lights at her as she was entering the school. (*Id.* at 5-6.) A third time, he walked the children from his class through her class's line and smiled at her. (*Id.* at 6.) In addition, Johnson would look at Plaintiff in the lunchroom and while passing her in the hall. (*Id*.) Plaintiff did not report any of these incidents to anyone in administration. (*Id*.; Doc. No. 124-8 at 25.)

---

[3] Plaintiff disputes the veracity of MCBOE's stated grounds for not transferring her but cites no evidence to show that a genuine factual dispute exists as to those grounds. (Doc. No. 123 at 16.)

After the winter school break, Plaintiff returned to work for the teacher in-service days in January 2017, but she did not return to teach in January or thereafter. (Doc. No. 108 at 6.)

On February 16, 2017, Plaintiff requested FMLA leave with a planned return-to-work date of February 27, 2017. (Doc. No. 108 at 6; Doc. No. 124-2 at 21.) The request was approved, and Plaintiff's FMLA leave began on February 17, 2017. (Doc. No. 108 at 6; Doc. No. 124-2 at 21.) The leave of absence request form that Plaintiff submitted, and which Principal Nelson signed, did not contain a statement regarding the employee's right to job restoration. (Doc. No. 124-12 at 18.)

On March 1, 2017, Plaintiff submitted a second FMLA leave request, which was approved, and her leave continued without interruption. (Doc. No. 108 at 6.) Plaintiff's second leave request listed her return date as "undetermined." (*Id.*) Along with her second leave request, Plaintiff submitted a note from her physician stating that her "recovery is unknown." (*Id.*) FMLA leave requests greater than ten days must be voted on by MCBOE. (Doc. No. 124-12 at 16-17.) On March 15, 2017, after MCBOE met and voted to approve Plaintiff's March 1, 2017 FMLA leave request, Defendant Johnston sent a letter to Plaintiff informing her that her leave request was approved. (Doc. No. 124-2 at 24; Doc. No. 124-12 at 18; Doc. No. 124-20 at 15-16.) The letter also informed Plaintiff that, prior to returning to work, she would need a doctor's statement confirming that she was physically and emotionally able to return to work. (Doc. No. 124-2 at 24.) MCBOE hired a substitute teacher for Plaintiff's class for the remainder of the school year. (*Id.*)

In March 2017, Principal Nelson submitted an intent form to MCBOE recommending that six nontenured teachers not be re-employed at McKee for the 2017-18 school year: Perry Mosely, Telissa Warren, Warren Roberts, Arthur Bailey, Seekina McMillan, and Plaintiff. (Doc. No. 108 at 7; Doc. No. 124-11 at 6.) Of these six, Plaintiff was the only one who had requested FMLA leave. (Doc. No. 126-15 at 3.) McMillan was the only one of the six who was re-hired to work at McKee; she was rehired as a special education teacher, which requires specific certification. (Doc. No. 126-15 at 3.) MCBOE re-hired Telissa Warren to work at a different middle school the following year. (*Id.* at 4.)

Defendant Nelson recommended that Plaintiff's employment not be renewed because her sixth-grade math intervention position was funded by Title I funds,[4] and he did not know if McKee would receive Title I funds the following school year. (Doc. No. 126-15 at 3-4.) Plaintiff's elementary teaching certificate did not cover most of the classes at McKee, and Defendant Nelson was concerned that "there was a good chance" no job would be available for Plaintiff the following year due to her teaching certification limitations. (*Id.*) As it later turned out, both of the sixth-grade math intervention positions at McKee were eliminated the following year. (*Id.* at 4.) Johnson, who had tenure, was reassigned to teach sixth grade science at McKee for the 2017-18 school year. (*Id.*)

---

[4] "Title I funds" refers to federal funds available through Title I of the Elementary and Secondary Education Act of 1965, as amended, 20 U.S.C.A. §§ 6301, *et seq*. Title I funds are offered to schools with a high percentage of low-income students; the funds pay for extra educational services to help at-risk students overcome their lack of resources. (Doc. No. 126-18 at 10.) The amount of Title I funds available to a school can change from year to year depending on the number of students enrolled and the amount of money allocated by the federal budget. (*Id.* at 10-11.)

By letter dated May 17, 2017, Principal Nelson notified Plaintiff that MCBOE had accepted his recommendation not to renew her contract, effective May 26, 2017. (Doc. No. 124-2 at 15.) The letter stated that, if Plaintiff wished to be rehired by MCBOE for the upcoming year, she should "check the state website and re-apply online." (*Id*.)

The record contains a doctor's note dated May 25, 2017, stating that Plaintiff would be able to return to work on May 26, 2017, the last day of the 2016-17 school year. (Doc. No. 108 at 6, n.3; Doc. No. 124-2 at 30, 33.) Plaintiff alleges that she "submitted" the May 25, 2017 doctor's note to Defendants. Defendants do not dispute that the note was submitted; however, they do dispute that they received it. (Doc. No. 108 at 6; Doc. No. 124-2 at 9.) A March 23, 2018 letter from Plaintiff's attorney purports to enclose the May 25, 2017 doctor's note to Defendants. (Doc. No. 123-2 at 31-33; Doc. No. 124-7 at 2-4.) In her summary judgment briefs, Plaintiff does not allege that she provided the doctor's note to Defendants earlier than March 23, 2018, nor does she cite any evidence to support such an allegation. (Doc. No. 108 at 6; Doc. No. 123 at 19.)

## IV.    PROCEDURAL HISTORY

On December 27, 2016 and February 27, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 1-1; Doc. No. 124-1 at 2-5.) On February 20, 2018, the EEOC issued a letter of dismissal and notice of rights. (Doc. No. 124-1 at 4-5.)

On May 21, 2018, Plaintiff filed a Complaint against MCBOE, Robert Porterfield, Ann Roy Moore, Lisa Keith, W. Durden Dean, Eleanor Dawkins, Mary Briers, Arica Watkins Smith, Patrick Nelson, John Johnston, and Melissa Snowden. MCBOE is

Plaintiff's former employer and operates the Montgomery County, Alabama school system. (Doc. No. 1 at ¶¶ 7-8.) Defendant Ann Roy Moore was the Superintendent of MCBOE at the time Plaintiff filed her Complaint. Defendant Robert Porterfield was the President of MCBOE at the time Plaintiff filed her Complaint. (Doc. No. 1 at ¶ 11.) Defendants Keith, Dean, Dawkins, Briers, and Smith were MCBOE board members at the time Plaintiff filed her Complaint. (Doc. No. 1 at ¶¶ 12-16.) Although Defendant Snowden is named in the style of the Complaint and has appeared in the case, the Complaint does not state who she is or describe any acts or omissions on her part that relate to Plaintiff's claims. (Doc. No. 1.) Plaintiff sues Defendants Porterfield, Moore, Keith, Dean, Dawkins, Briers, Smith, Nelson, Johnston, and Snowden in both their individual and official capacities. (Doc. No. 1 at ¶¶ 10-18.)

On June 28, 2018, Defendants MCBOE, Briers, Dean, Keith, Porterfield, Smith, and Snowden filed an answer. (Doc. No. 6.) On July 5, 2018, Defendant Dawkins filed an answer. (Doc. No. 6.) On August 6, 2018, Defendants Johnston, Moore, and Nelson filed an answer. (Doc. No. 24.)

On December 12, 2019, Plaintiff and Defendants filed motions for summary judgment. (Docs. No. 73, 74, 76.) On October 30, 2020, the parties filed a Joint Motion for Leave to File Stipulations and Status Report. (Doc. No. 106.) The parties stated that, due to "the voluminous nature" of then-pending summary judgment motions and motions involving a discovery dispute, "the parties [sought] leave of court to file a document setting forth the issues to which the parties can stipulate, which issues remain disputed at this time, and a summary of the parties['] positions on the disputed issues." (*Id.* at 3.) The parties

stated that "submitting such a joint summary document with these stipulations should help narrow the issues for the court." (*Id.*)

On November 2, 2020, the Court granted the parties' joint motion to file stipulations, and the parties filed their joint stipulations on November 20, 2020. (Doc. No. 106 at 3; Doc. No. 108.)

On February 22, 2020, the Court entered an order continuing the case due to the COVID-19 pandemic and setting the case for a status conference on April 13, 2021. (Doc. No. 109.) On April 9, 2021, the Court entered an order resetting the April 13, 2021 status conference to an oral argument on all pending motions. (Doc. No. 110.)

On January 10, 2022, after hearing oral argument on all pending motions, the Court entered an order resolving the then-pending discovery motions, reopening discovery for the limited purpose of allowing one additional deposition, and directing Plaintiff to file a proposed discovery plan as to a certain limited issue. (Doc. No. 113.) On January 19, 2022, Plaintiff filed a proposed discovery plan for additional limited discovery. (Doc. No. 116.)

On January 21, 2022, the Court denied the then-pending motions for summary judgment with leave to refile. (Doc. No. 117.) The Court directed the parties to submit a joint plan for limited discovery and a jointly-proposed deadline for dispositive motions. (Doc. No. 117.)

On February 3, 2022, the Court entered a new Uniform Scheduling Order. On June 1, 2022, Plaintiff filed a motion for summary judgment. (Doc. No. 123.) On June 3, 2022, Defendants filed a motion for summary judgment. (Doc. No. 125.)

On June 23, 2022, Defendants filed a motion for leave to amend their summary judgment brief. (Doc. No. 131.) Plaintiff filed no opposition to Defendants' motion for leave to amend their brief.[5]

## V.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. U.S.*, 904 F. Supp. 1312, 1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

---

[5] (*See* Doc. No. 120 at 2, Section 6) ("The failure to file a response to any motion – either dispositive or non-dispositive – within the time allowed by the Court shall indicate that there is no opposition to the motion.").

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated by the Court in *Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

The existence of cross-motions for summary judgment does not affect the applicable Rule 56 standard. *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1330 (S.D. Ala. 2003) (citing *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001)). The court considers each motion separately and need not necessarily grant one or the other. *Id.* ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (quoting *U.S. v. Oakley*, 744 F. 2d 1553, 1555 (11th Cir. 1984))). The existence

of cross-motions, however, may indicate the parties' belief that there is agreement on the material facts. *Id.*

## VI.   DISCUSSION

### A.   Defendants' Motion for Leave to Amend Their Summary Judgment Brief

On June 23, 2022, Defendants moved for leave to file an amended summary judgment brief. (Doc. No. 131.) Plaintiff did not file any opposition to the motion. Although Plaintiff filed her response to Defendants' summary judgment motion on June 23, 2023, allowing the Defendants to amend their brief will not prejudice Plaintiff because Defendants' amended brief is identical to the original, except that the table of contents has been slightly revised and a table of authorities was added. Accordingly, the Court concludes Defendants' motion for leave to amend their reply brief is due to be granted.

### B.   FMLA Interference Claims (Counts One and Two)

In Count One of the Complaint, Plaintiff alleges that MCBOE interfered with the exercise of her FMLA rights. (Doc. No. 1 at ¶¶ 39-43.) In Count Two of the Complaint, Plaintiff alleges that MCBOE "knowingly and willfully and with reckless disregard" interfered with the exercise of her FMLA rights. (Doc. No. 1 at ¶¶ 44-48.) Plaintiff stipulates that she asserts her FMLA interference claims (Counts One and Two) only against MCBOE, and not against any of the other Defendants in this case. (Doc. No. 108 at 7.) In accordance with that stipulation,[6] Counts One and Two of the Complaint are due

---

[6] Despite her stipulation, in briefing on summary judgment, Plaintiff argues that "Defendants" are liable on her FMLA interference claims, though she does concede in a summary judgment brief that "there is no individual capacity or personal liability" on her FMLA claims. (Doc. No. 130 at 3, 5.) The Court does not need to evaluate whether or to what extent Plaintiff effectively retracted

to be dismissed without prejudice as to all individual Defendants in their official and personal capacities.

To prevail on a claim for interference with FMLA benefits, Plaintiff must prove (1) that she was denied a benefit to which the FMLA entitled her, and (2) that the denial of the FMLA benefit prejudiced her in some way. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014); *see also* 29 U.S.C. § 2617(a)(1)(A) (providing that employers who interfere with FMLA benefits are liable "to any eligible employee affected" for damages equal to "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" and "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion").

Although there is no dispute that MCBOE provided Plaintiff at least 12 weeks of FMLA leave,[7] Plaintiff alleges that MCBOE denied FMLA benefits to her by the following conduct: failure to comply with unspecified FMLA notice requirements, failure to provide notification of approval of her FMLA leave request within five days of submission of the request, notice of the right to job restoration, and the right to job restoration. (Doc. No. 108

---

her stipulation with respect to Defendants' liability on the FMLA interference claims because, for the reasons stated in this Section of the Memorandum Opinion and Order, Plaintiff's FMLA interference claims are without substantive merit.

[7] Defendants argue that Plaintiff was not entitled to FMLA leave because she had not worked at least 1,250 hours during the previous 12 months as required by 29 U.S.C. § 2611(2)(A)(ii). Plaintiff disputes whether Defendants have met their burden to prove how many hours she worked. The Court does not need to resolve that dispute because, explained in this Section of the Memorandum Opinion and Order, Plaintiff cannot prevail on her FMLA interference claims for other reasons.

at 8-9; Doc. No. 123 at 19.) Assuming for the sake of resolving the summary judgment motions that these were all "benefits" to which Plaintiff was entitled under the FMLA, and further assuming (without deciding) that MCBOE failed to provide those benefits, Plaintiff still must demonstrate that she was prejudiced by that failure. *See Evans*, 762 F.3d at 1295. Not being restored to her job is the only prejudice Plaintiff alleges that she suffered as a result of MCBOE's alleged acts of FMLA interference.

Thus, the Court considers the causal relationship, if any, between MCBOE's alleged acts of interference and the fact that MCBOE did not restore Plaintiff to her job. "An employee has the right following FMLA leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (quoting 29 U.S.C. § 2614(a)(1)(A)). However, the right to reinstatement is "not absolute; an employer can deny reinstatement 'if it can demonstrate that it would have discharged the employee had [the employee] not been on FMLA leave.'" *Id*. (quoting *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001)); *see also* 29 C.F.R. § 825.216 ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").

It is undisputed that Plaintiff did not return to work after taking FMLA leave. Plaintiff cites no evidence that, during the 2016-17 school year, [8] she attempted or even

---

[8] Plaintiff cites a May 25, 2017 doctor's note stating that she could return to work on May 26, 2017 (the last day of the school year), but she cites no evidence that, prior to the end of the 2016-17

wanted to return to work before the end of the school year. Plaintiff supplies no evidence that any Defendant prevented her from returning before the end of the 2016-17 school year or that the alleged acts of interference somehow prevented her return before the end of the school year. Further, Defendants provided uncontradicted evidence that, in March 2017, Defendant Nelson chose to recommend nonrenewal of Plaintiff's employment for the following school year because he was not certain if her position as a sixth-grade math teacher would be funded the following year, and because he was concerned that, due to the limitations of her elementary education teaching certificate, there would not be any other jobs available at McKee for which Plaintiff was qualified. (Doc. No. 126-15 at 3-4.) Plaintiff's teaching certificate did not cover most of the classes at McKee, and, as it turned out, there were no sixth-grade math intervention positions at McKee the following year. (*Id*.) Defendant Nelson's unrebutted reasons for recommending nonrenewal have no connection to the exercise of Plaintiff's rights under the FMLA or to the alleged acts of interference.

Thus, the uncontradicted evidence demonstrates lack of causation. There is no evidence the alleged acts of interference prevented Plaintiff from returning to her job during the 2016-17 school year. As for the 2017-18 school year, the unrebutted evidence

---

school year, she provided that doctor's note to MCBOE or otherwise sought or desired to return to her teaching duties during that school year. (Doc. No. 108 at 6; Doc. No. 124-2 at 30, 33.) Plaintiff contends that she "submitted" the doctor's note to Defendants, but she does not allege or cite any evidence that she submitted it earlier than the following year when her attorney enclosed the note in a March 23, 2018 letter demanding reinstatement. (Doc. No. 108 at 6; Doc. No. 124-2 at 9.) Thus, the doctor's note, standing alone, cannot support the inference that Plaintiff would have returned to her job before the end of the school year but for the alleged FMLA interference.

establishes that, for reasons wholly unrelated to Plaintiff's FMLA benefits or to the alleged acts of interference, MCBOE chose not to offer Plaintiff her former job or an equivalent one. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) (recognizing that, "if an employer can show that it refused to reinstate an employee for a reason unrelated to FMLA leave, the employer is not liable for failing to reinstate the employee after the employee has taken FMLA leave" (citing *Strickland*, 239 F.3d at 1208)); *see also Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824, 828 (11th Cir. 2020) (holding that, "[i]n the absence of any evidence showing that [the plaintiff] sustained any monetary loss or any other prejudice as a direct result of the alleged technical violations of the FMLA, [the plaintiff] was not entitled to any relief").

Plaintiff contends that, despite the lack of specific harm caused by the alleged interference, she nevertheless can overcome summary judgment on her FMLA interference claims because she seeks equitable relief. She argues that "equitable relief constitutes injury and prejudice supporting an FMLA interference claim just as monetary damages." (Doc. No. 130 at 12.) Plaintiff is incorrect. Although equitable relief may theoretically be awarded in the absence of compensable harm, equitable relief cannot be awarded unless Plaintiff first demonstrates that the FMLA interference caused *some* harm or prejudice that is remediable by equitable relief. An FMLA interference claim, even for equitable relief alone, cannot survive on a mere technical violation that causes no remediable harm. *Ragsdale*, 535 U.S. at 89 (holding that the FMLA "provides no relief unless the employee has been prejudiced by the violation," and noting that the remedy for FMLA interference, including appropriate equitable relief such as reinstatement, "is tailored to the harm

suffered"); *Evans*, 762 F.3d at 1295-96; *Boykin v. Home Choice of Alabama, Inc.*, No. CV 18-0281-WS-MU, 2018 WL 5315210, at *3 (S.D. Ala. Oct. 26, 2018) (denying a motion to dismiss an FMLA interference claim where the plaintiff could plausibly "demonstrate some harm from the denial of her FMLA leave that may be remediable by equitable relief"); *see also Aponte*, 806 F. App'x at 828 (holding that technical violations of the FMLA do not give rise to a claim for FMLA interference unless they directly cause "monetary loss or *any other prejudice*" (emphasis added)).

Accordingly, Plaintiff's FMLA interference claims (Counts One and Two) against MCBOE are due to be dismissed with prejudice. *Aponte*, 806 F. App'x at 828 (holding that summary judgment was appropriate on an FMLA interference claim "[i]n the absence of any evidence showing that [the plaintiff] sustained any monetary loss or any other prejudice as a direct result of the alleged technical violations of the FMLA").

## C.   FMLA Retaliation Claims (Counts Three and Four)

Plaintiff stipulates that she asserts her FMLA retaliation claims (Counts Three and Four) only against MCBOE, and not against any of the other Defendants in this case. (Doc. No. 108 at 16.) In accordance with that stipulation,[9] Counts Three and Four of the Complaint are due to be dismissed without prejudice as to all Defendants except MCBOE.

---

[9] Despite her stipulation, in briefing on summary judgment, Plaintiff argues that "Defendants" are liable on her FMLA retaliation claims, though she concedes that "there is no individual capacity or personal liability under . . . the FMLA." (Doc. No. 130 at 3, 5.) The Court need not evaluate whether or to what extent Plaintiff effectively retracted her stipulation with respect to Defendants' liability on the FMLA retaliation claims because, for the reasons stated in this Section of the Memorandum Opinion and Order, Plaintiff's FMLA retaliation claims are without substantive merit.

"[T]o succeed on a retaliation claim, an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. Absent direct evidence of the employer's intent, the Eleventh Circuit analyzes an FMLA retaliation claim using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Strickland*, 239 F.3d at 1207. Under the *McDonnell Douglas* framework, Plaintiff must first offer evidence sufficient to establish a *prima facie* case of retaliation by showing "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Id.*

It is undisputed that Plaintiff engaged in statutorily protected activity by requesting FMLA leave. (Doc. No. 18 at 16.) It is also undisputed that Plaintiff suffered an adverse employment action when MCBOE did not renew her teaching contract for the 2017-18 school year. *Id.* As to causation, the third element of Plaintiff's *prima facie* case, she relies solely on the proximity between the date of her first request for FMLA leave in February 2017, the date of March 15, 2017 when Defendant Nelson recommended her contract be nonrenewed, and MCBOE's May 15, 2017 decision not to renew her contract. (Doc. No. 123 at 20.)

Assuming, without deciding, that the timing between Plaintiff's FMLA leave request and MCBOE's decision not to renew Plaintiff's contract is close enough to create

20

a *prima facie* case of a causal connection,[10] then, under the *McDonnell Douglas* framework, the burden shifts to MCBOE to provide evidence of a "legitimate, nondiscriminatory reason" for not renewing Plaintiff's contract. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1216 (11th Cir. 2021). MCBOE has supplied evidence that the reason Defendant Nelson recommended that Plaintiff's contract not be renewed for the 2017-18 school year was because (1) he was concerned Plaintiff's math intervention teaching position would not be funded for the 2017-18 school year and (2) "there was a good chance" no other position at McKee would be available for her due to the limitations of her elementary education teaching certificate, which did not cover most positions at McKee. (Doc. No. 126-15 at 3-4.)

Because Defendant Nelson's reasons for recommending nonrenewal are wholly unrelated to Plaintiff's protected FMLA activity, MCBOE met its burden to proffer a legitimate, nonretaliatory reason for the nonrenewal. Accordingly, the *McDonnell Douglas* burden shifts to Plaintiff to show that MCBOE's articulated reasons for not renewing the contract are merely a pretext for retaliation. *Todd*, 998 F.3d at 1216. Specifically, Plaintiff must come forward with evidence, including evidence used in making the *prima facie* case, to establish "'such weaknesses, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

---

[10] Defendant argues that the timing between the events was too remote to give rise to a *prima facie* case of retaliation. The Court pretermits discussion of this argument because, as explained in this Section of the Memorandum Opinion and Order, Plaintiff's FMLA retaliation claims are due to be dismissed because she cannot rebut Defendants' uncontradicted evidence of nondiscriminatory animus.

find them unworthy of credence.'" *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1337 (11th Cir. 2021) (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)). Plaintiff "ultimately . . . bears the burden of showing that discrimination was the reason for her dismissal." *Todd*, 998 F.3d at 1216.

In response to MCBOE's proffered evidence of nonretaliatory animus, Plaintiff has not come forward with evidence to suggest pretext. (Doc. No. 130 at 5-6.) She merely restates the undisputed facts that (1) she engaged in a protected activity and (2) she suffered an adverse employment action. (*Id.*) She offers no discussion of causation, retaliatory animus, or MCBOE's proffered reasons for its decision not to renew her contract.[11] (*Id.*)

Because Plaintiff failed to provide any evidence of pretext, MCBOE is entitled to summary judgment on Plaintiff's FMLA retaliation claims (Counts Three and Four).

---

[11] At this final stage of the *McDonnell Douglas* burden-shifting analysis, Plaintiff does not argue that pretext is suggested by the mere temporal proximity between the protected FMLA activity and the adverse employment action, the sole evidence upon which Plaintiff relied to establish her *prima facie* case. Even if Plaintiff had raised such an argument, that timing – approximately two weeks – would not by itself be sufficient grounds to establish pretext in this case, especially because Plaintiff has not argued that it is, nor has she cited any caselaw to support such an argument. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020) (holding that, "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient" at the final stage of the *McDonnell Douglas* framework; *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("The close temporal proximity between Hurlbert's request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself."); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) ("The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. . . . It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship."); *Chavous v. City of Saint Petersburg*, 576 F. Supp. 3d 1040, 1062 n.5 (M.D. Fla. 2021) ("If mere temporal proximity was enough to establish causation and to rebut the employer's asserted rationale, then it would collapse the *McDonnell Douglas* analysis into the *prima facie* case.").

*Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) ("[T]o avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual.").

**D.     Title VII- Sexual Harassment/Hostile Work Environment Claim (Count Five)**

In Count Five of Plaintiff's Complaint, she alleges that, in violation of Title VII, she was subjected to a hostile work environment as a result of sexual harassment. (Doc. No. 1 at ¶¶ 59-72; Doc. No. 108 at 16.) Plaintiff stipulates that she asserts her hostile work environment claim (Count Five) only against MCBOE, and not against any of the other Defendants in this case; she further concedes that "there is no individual capacity or personal liability under Title VII." (Doc. No. 108 at 11; Doc. No. 130 at 3.) In accordance with the stipulation,[12] Count Five of the Complaint is due to be dismissed without prejudice as to all Defendants except MCBOE.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Although Title VII itself does not mention sexual harassment, it has long been settled that the statutory phrase 'terms, conditions, or privileges of

---

[12] In her initial summary judgment brief, Plaintiff refers to alleged wrongful conduct by "Defendants" with respect to her Title VII hostile work environment claim. (Doc. No. 123 at 6-14.) However, in a summary judgment response brief, she argues only that "MCBOE is not entitled to summary judgment on Plaintiff's hostile work environment claim." (Doc. No. 130 at 6.) The Court need not evaluate whether or to what extent Plaintiff effectively retracted her stipulation with respect to Defendants' liability on the Title VII hostile work environment claim because, for the reasons stated in this Section of the Memorandum Opinion and Order, Plaintiff's Title VII hostile work environment claim is without substantive merit.

employment' includes within its scope a discriminatorily hostile or abusive environment." *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)).

To establish a *prima facie* case of hostile work environment due to sexual harassment, Plaintiff must show "(1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis [exists] for holding the employer liable." *Hulsey, LLC*, 367 F.3d at 1244. As explained below, MCBOE is entitled to summary judgment on the fifth element of Plaintiff's *prima facie* case, obviating the need to address the parties' arguments regarding the other elements of her *prima facie* case.

When the alleged harassment is committed by a coworker, "a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003). Actual notice can be provided by evidence MCBOE knew of the harassment. *Id*. "Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it." *Id*.

Plaintiff does not argue that MCBOE knew or should have known about Johnson's allegedly harassing conduct before she reported it to Assistant Principal Williams and Defendant Nelson on September 16, 2016, or that it failed to take effective action before

that date. (Doc. No. 123 at 3.) Rather, Plaintiff argues, once MCBOE received her complaint, it was responsible to take appropriate corrective action, but did not. (*Id*.) Plaintiff contends that MCBOE's corrective action was ineffective, inadequate, and negligent because, after MCBOE reprimanded and disciplined Johnson, he continued to sexually harass her on three occasions: (1) when he said "Good morning, Ms. Miller" as the two passed by each other on the way into school one morning; (2) when he flicked his car lights at her one day as she was entering the school, and (3) when he smiled at her when he and his students passed through her students' line in the hallway. (Doc. No. 123 at 9, 13.)

It is undisputed that Plaintiff never reported the post-reprimand incidents to MCBOE, and she does not discuss or provide any evidentiary support to show why MCBOE somehow should have known about those incidents. (Doc. No. 108 at 6.) Nevertheless, Plaintiff argues that the mere fact those incidents occurred proves MCBOE's corrective action was inadequate and unreasonable. *See Johnson v. Austal, U.S.A., L.L.C.*, 805 F. Supp. 2d 1299, 1317 (S.D. Ala. 2011) (holding that an employer's corrective action "'must be "reasonably calculated to end the harassment," and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the . . . harassment ended after the remedial action was taken.'" (quoting *Munn v. Mayor and Aldermen of City of Savannah, Ga.*, 906 F. Supp. 1577, 1583 (S.D. Ga.1995)). *But see Stancombe v. New Process Steel LP*, 652 F. App'x 729, 736 (11th Cir. 2016) (holding that warnings and counselling for the harasser are sufficient when allegations are substantiated, and that, even though warning and counseling did not prevent

a second incident from occurring, "we cannot say that [the employer's] actions were unreasonable or inappropriate under the circumstances").

In response to Plaintiff's sexual harassment complaint, MCBOE launched an immediate investigation upon receiving her complaint; reprimanded, disciplined, and instructed Johnson not to communicate further with Plaintiff; and moved Plaintiff's classroom farther from Johnson's room at her request. Plaintiff contends that MCBOE should have done more to achieve an adequate response. Specifically, Plaintiff contends that Principal Nelson should have taken a more active role in monitoring Johnson's interactions with her after the reprimand and that MCBOE should have granted her request to transfer to another school. Of note, Plaintiff provides no explanation or evidence to show how additional "monitoring" by the school principal would have alerted him to (or prevented) the three fleeting interactions between her and Johnson that occurred in different locations on the McKee campus after Johnson was instructed to communicate no further with her.

In any event, Plaintiff cannot prevail on her argument that MCBOE should have done more because she provided no evidence that the measures MCBOE *did* undertake were inadequate to stop Johnson from sexually harassing her. Although a reasonable factfinder could find that Johnson intended to communicate *something* by stating, "Good morning," flicking his car lights, and smiling at Plaintiff while passing her in the hallway, she has not explained or provided any evidence to demonstrate how those communications could reasonably be considered sexually harassing in nature or based on Plaintiff's sex. Thus, Plaintiff has not supplied any evidence that MCBOE's corrective action was

ineffective to stop Johnson from sexually harassing her. *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir.2007) (holding that Title VII "does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex."); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (holding that, to overcome a summary judgment motion, the non-moving party must produce substantial evidence, which requires more than a "mere scintilla" or "some metaphysical doubt as to the material facts").

Accordingly, MCBOE is entitled to summary judgment on Count Five of Plaintiff's Complaint. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1261 (11th Cir. 2003) ("If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for the harassment."). *Cf. Baldwin*, 480 F.3d at 1306 (holding that, where an employer has chosen an adequate remedy, the complainant does not get to choose a different one).

## E.    Title VII - Gender Discrimination Claim (Count Six)

In Count Six of her Complaint, Plaintiff alleges that she was subjected to discrimination on the basis of her sex in violation of Title VII. (Doc. No. 1 at ¶¶ 73-80.) Plaintiff stipulates that she asserts her Title VII sex discrimination claim (Count Six) only against MCBOE, and not against any of the other Defendants in this case. (Doc. No. 108 at 21.) In accordance with the stipulation, Count Six of the Complaint is due to be dismissed without prejudice as to all Defendants except MCBOE.

Plaintiff alleges that MCBOE discriminated against her based on her gender by denying her request to transfer to another school for the remainder of the 2016-17 school year and by not renewing her contract for the 2017-18 school year. (Doc. No. 123 at 16.) To survive summary judgment on her gender discrimination claim, Plaintiff "must present sufficient facts to permit a jury to rule in her favor." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 (11th Cir. 2019). She attempts to do by satisfying the *McDonnell Douglas* burden-shifting framework. (Doc. No. 123 at 15-16.) Therefore, Plaintiff "bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id*. at 1220–21.

It is undisputed that, as a woman, Plaintiff is a member of a protected class, thus satisfying the first element of her *prima facie* case. (Doc. No. 108 at 21.) As for the second element of Plaintiff's *prima facie* case, the parties do not dispute that she was subjected to adverse employment action when MCBOE decided not to renew her contract for the 2017-18 school year. (*Id.* at 21-22.) MCBOE does dispute that the denial of a mid-year transfer was an adverse employment action. However, as explained below, even if denial of a mid-year transfer did constitute an adverse employment action, MCBOE is nevertheless entitled to summary judgment on Plaintiff's Title VII gender discrimination claim.

As for the third element of Plaintiff's *prima facie* case – that she was qualified to perform the job in question – Plaintiff offers no proof. Plaintiff does not provide any evidence that she was qualified for an available job at another school for the 2016-17 school

year (for a transfer) or at McKee or elsewhere for 2017-18 (for a contract renewal). Plaintiff's elementary teaching certificate did not cover most of the classes at McKee, and all sixth-grade math intervention positions (a job for which Plaintiff was qualified) were eliminated at McKee for the 2017-18 school year. (Doc. No. 126-15 at 3-4.) Plaintiff's May 17, 2017 nonrenewal letter stated that, if she wished to be considered for rehire the following year, she should "check the state website and reapply online." (Doc. No. 124-2 at 15.) Plaintiff identifies no jobs for which she was qualified to apply for rehire to teach the following year and offers no evidence that MCBOE rejected any application for rehire. In sum, the undisputed evidence contains no indication that a job existed for which Plaintiff was qualified for transfer, rehire, or contract renewal.

As for the final element of Plaintiff's *prima facie* case – that her employer treated differently the similarly-situated employees outside her protected class – Plaintiff's gender-discrimination claims fail as a matter of law. As to her claim of discriminatory refusal to renew her contract, Plaintiff fails to identify any similarly-situated comparators whose contracts were renewed, and her own evidentiary submission indicates that both male and female teachers were on Defendant Nelson's list of teachers recommended for nonrenewal. (Doc. No. 108 at 7; Doc. No. 124-11 at 6.) As for her claim of discriminatory refusal to transfer her to another school during the 2016-17 school year, Plaintiff also does not identify any comparators in summary judgment briefing; however, the parties' joint stipulation states that Plaintiff identifies two males, Alan Owens and Reginald Coats, "as being transferred in the middle of the school year while her request for a transfer was denied." (Doc. No. 108 at 21.) In the joint stipulation, as well as in summary judgment

briefing, however, Defendants argue that Owens and Coats are not similarly-situated comparators. (Doc. No. 108 at 22.)

In applying the *McDonnell Douglas* framework, an appropriate comparator is one that is "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. While the comparator need not be a doppelganger, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id*. at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).

Alan Owens is an HVAC technician who was assigned to several schools at once. (Doc. No. 126-6 at ¶ 12.) In response to a sexual harassment complaint against him, during the school year, MCBOE relieved him of his duties at one of his assigned schools and added another school to his list of assigned schools. (*Id*.) Owens is not a valid comparator because he can "reasonably be distinguished" from Plaintiff. *Lewis*, 918 F.3d at 1228. He is not a teacher. Adjusting a maintenance worker's list of assigned schools mid-year does not involve the same material considerations as removing a certified teacher from a classroom at one school in the middle of the year and reassigning her to another school, displacing another teacher[13] in the process and requiring MCBOE to assign another qualified teacher to instruct the transferee's original students for the remainder of the school year. In addition, Plaintiff has not shown that (as with Owens) there was a position at another school for which she was qualified and that could accommodate the change in

---

[13] Plaintiff has not identified any open positions at other schools for which she was qualified and that were available during the time she sought a mid-year transfer.

work assignments. Therefore, Plaintiff has not established that she is situated similarly to Owens "in all material respects." *Lewis*, 918 F.3d at 1218.

Reginald Coats was a math coach at Vaughn Road Elementary School. (Doc. No. 126-18 at ¶ 7.) In response to an allegation of sexual harassment against Coats in May 2011, MCBOE placed him on leave beginning May 9, 2011, for the remainder of the school year, then transferred him to begin the following school year at another school. (*Id.*) Like Owens, Coats is readily and reasonably distinguishable from Plaintiff. Placing a math coach on leave for the brief remainder of the 2010-11 school year does not entail the same material considerations as removing a 6th grade math intervention classroom teacher from her assigned students much closer to the middle of the school year and finding another qualified teacher to effectively replace her in the classroom mid-year. Further, Plaintiff presents no evidence that reassigning Coats displaced another teacher or that, had she been reassigned mid-year, no other teacher would have been displaced. In addition, Plaintiff has not supplied evidence that (as with Coats), a teaching position was available that could accommodate the change in her job assignment. Thus, Plaintiff has not shown that she and Coats are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218.

Even if Plaintiff had made out a *prima facie* case of discrimination (she did not), she made no effort to address the remaining requirements of the *McDonnell Douglas* framework by supplying evidence to support her conclusory argument that MCBOE's nondiscriminatory reason for firing her was "simply not true." (Doc. No. 123 at 16.) MCBOE stated that it did not transfer Plaintiff mid-year because it had a policy of not granting teachers' requests to transfer after the first 20 days of school. (Doc. No. 124-12 at

19; Doc. No. 126-25 at 10.) Plaintiff has not articulated any basis or supplied any evidence for concluding that MCBOE's explanation was pretextual, and neither of her proffered comparators were teachers transferred after the first 20 days of the school year in derogation of MCBOE's stated policy.

Accordingly, MCBOE is entitled to judgment as a matter of law on Plaintiff's Title VII sex discrimination claim (Count Six). *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) ("If the plaintiff does not satisfy her burden of establishing a genuine issue of material fact that the employer's reason [for the adverse employment action] was pretextual, the grant of summary judgment in favor of the employer is proper.").

## F.    Title VII Retaliation Claim (Count Seven)

Plaintiff stipulates that she asserts her FMLA retaliation and Title VII retaliation claims (Counts Three, Four, and Seven) only against MCBOE, and not against any of the other Defendants in this case. (Doc. No. 108 at 16.) In accordance with that stipulation, [14] Count Seven of the Complaint is due to be dismissed without prejudice as to all Defendants except MCBOE.

Title VII prohibits employers from discriminating against employees in retaliation for making a charge of sex discrimination. 42 U.S.C. § 2000e-3(a). Plaintiff alleges that

---

[14] Despite her stipulation, in briefing on summary judgment, Plaintiff argues that "Defendants" are liable on her Title VII retaliation claims, though she concedes that "there is no individual capacity or personal liability under Title VII." (Doc. No. 130 at 3, 5.) The Court does not need to evaluate whether or to what extent Plaintiff effectively retracted her stipulation with respect to Defendants' liability on the Title VII retaliation claims because, for the reasons stated in this Section of the Memorandum Opinion and Order, Plaintiff's Title VII retaliation claims are without substantive merit.

MCBOE retaliated against her for making a charge of sex discrimination by moving her classroom to a new location, not cleaning her new classroom, and not renewing her teaching contract for the 2017-18 school year. In the absence of direct evidence of retaliatory intent, the *McDonnell Douglas* framework applies to Plaintiff's Title VII retaliation claims. *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1344 (11th Cir. 2022); *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 933 (11th Cir. 2017). To make a *prima facie* case for a claim of retaliation under Title VII, a plaintiff must first show (1) that "she engaged in statutorily protected activity," (2) that "she suffered an adverse action," and (3) "that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134–35 (11th Cir. 2020) (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018); *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009)).

The first element of Plaintiff's *prima facie* case is satisfied. Title VII expressly prohibits retaliation for making a sex discrimination charge. 42 U.S.C. § 2000e-3(a). The parties have stipulated that Plaintiff engaged in protected activity when she filed her sexual harassment complaint on September 16, 2016. (Doc. No. 108 at 16.)

As for the second element of Plaintiff's *prima facie* case, the parties agree that nonrenewal of Plaintiff's contract constitutes an adverse employment action. (Doc. No. 108 at 16.) MCBOE also does not dispute that the failure to clean Plaintiff's classroom was an adverse employment action. (Doc. No. 129 at 18.) As for MCBOE moving Plaintiff's classroom, however, Plaintiff has submitted no evidence that moving to a new location caused her any injury or materially altered the conditions of her employment in any

negative way. In fact, Plaintiff herself requested the move so that she would not have to teach next door to Johnson, her alleged harasser. Because the undisputed evidence establishes that the classroom move was not an adverse action, MCBOE is entitled to judgment as a matter of law on Plaintiff's claim that moving her classroom constituted impermissible retaliation in violation of Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("The antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.").

As for the classroom cleaning issue and the third element of Plaintiff's *prima facie* case, causation, Plaintiff offers only a conclusory assertion that her classroom "was not cleaned in retaliation for her sexual harassment complaint." (Doc. No. 123 at 15.) If there exists some basis to support a *prima facie* case that the lack of classroom cleaning had anything to do with her sexual harassment complaint, Plaintiff has not argued it on summary judgment.[15] For example, Plaintiff does not offer any explanation, argument, or evidence regarding when the classroom cleaning issue arose relative to the filing of her

---

[15] In deposition testimony that Plaintiff did not discuss on summary judgment, she testified to why she speculated that the lack of cleaning was retaliatory, and she included the classroom cleaning issue in her EEOC charge, which she attached to her Complaint. (Doc. No. 1-1; Doc. No. 124-8 at 26, 51.) Because Plaintiff did not include those reasons in her summary judgment arguments, the Court is not obligated to consider whether those reasons could support a *prima facie* case of causation on summary judgment. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Instead, the "onus is on the parties to formulate" their arguments on summary judgment, and "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id*; *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (holding that, on summary judgment, "[t]he district court is free to disregard arguments that are not adequately developed"); *Chavous v. City of Saint Petersburg*, 576 F. Supp. 3d 1040, 1051 (M.D. Fla. 2021) (holding that a summary judgment brief's "oblique reference" to certain evidence, without more, "d[id] not suffice to establish a *prima facie* case of [FMLA] interference").

harassment complaint; the evidence she cites without comment or discussion indicates only that the issue arose at some point after her classroom was moved and before she took FMLA leave. (Doc. No. 123 at 15 (citing Doc. No. 124-8 at 25-26).) Absent any arguments or evidence on the point, Plaintiff has failed to establish a *prima facie* case of a retaliatory cause behind the lack of classroom cleaning. Accordingly, the burden does not shift to MCBOE to establish a nondiscriminatory reason for the classroom cleaning issues, and MCBOE is entitled to summary judgment on Plaintiff's Title VII claim that MCBOE retaliated against her by not ensuring that her classroom was cleaned. *Glasscox v. Argo,*, 903 F.3d 1207, 1213 (11th Cir. 2018) ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact.").

For *prima facie* proof of a retaliatory cause behind the nonrenewal of her contract, Plaintiff relies entirely on "the timing of her complaint, move to another classroom a day or two later, recommendation not to renew employment by [Defendant] Nelson on March 15, 2017, and decision not to renew [Plaintiff's] contract by Defendant Johnston and MCBOE on May 15, 2017." (Doc. No. 123 at 15.) Plaintiff's reliance on temporal proximity is unavailing. Plaintiff filed her harassment complaint on September 16, 2016. (Doc. No. 124-8 at 19-20.) Thus, under the most generous construction of the timing of events, six months elapsed between the protected activity and the adverse action. At the *prima facie* stage of proving causation, "[t]he burden of causation can be met by showing *close* temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (emphasis added). However, "mere temporal proximity, without more, must be 'very

close.'" *Id.* (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). A sixth-month time span between the filing of the harassment complaint and the nonrenewal of Plaintiff's contract, without more, is not "very close" to establish a *prima facie* showing of causation. *See id.* ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").

Moreover, MCBOE has articulated a nonretaliatory basis for not renewing Plaintiff's contract: Defendant Nelson testified that he recommended nonrenewal because he was unsure that there would be a position available for Plaintiff at McKee in the 2017-18 school year. (Doc. No. 126-5 at 3-4.) Nevertheless, for her Title VII retaliation claim, Plaintiff has not come forward with any argument or evidence to demonstrate pretext at the final stage of the *McDonnell Douglas* burden-shifting framework.

Accordingly, MCBOE is entitled to summary judgment on Plaintiff's claim that it retaliated against her in violation of Title VII when it chose not to renew her contract. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (holding that, in the context of a Title VII retaliation claim, "[t]he plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct.").

**G.   Deliberate Indifference/Fourteenth Amendment Equal Protection Claim (Count Eight)**

**1.   The Legal Basis for Count Eight**

At the outset, it is necessary to determine under what legal authority Plaintiff is attempting to proceed with Count Eight of her Complaint. Plaintiff's pleadings and briefs are somewhat opaque on this point.

In Count Eight, Plaintiff alleges that Defendants were "deliberately indifferent to the discriminatory acts of Vincent Johnson." (Doc. No. 1 at ¶¶ 87-88.) As framed in the Complaint, the claim is thus premised on Defendants' alleged deliberately indifferent response to sexual harassment in the workplace.[16] In the Complaint, Plaintiff styles this claim as "COUNT EIGHT DELIBERATE INDIFFERENCE-EQUAL PROTECTION 14th AMENDMENT," but she also specifically references Title VII among her allegations with respect to this claim. (Doc. No. 1 at 15, ¶ 89.) In the parties' joint stipulations, the parties agree that Plaintiff brings her deliberate indifference claims pursuant to the Fourteenth Amendment's equal protection guarantee of freedom from sex discrimination. (Doc. No. 108 at 22.)

---

[16] In Plaintiff's brief in opposition to Defendants' summary judgment motion, she also alleges violations of the FMLA with respect to Count Eight. She does not explain how the alleged FMLA violations involve deliberate indifference, equal protection, or the Fourteenth Amendment. (Doc. No. 130 at 10-11.) Because Plaintiff did not explain her FMLA arguments adequately, nor did she assert in her Complaint or in the parties' joint stipulations that Count Eight was in any way premised on FMLA violations, the Court disregards Plaintiff's FMLA arguments with respect to Count Eight.

In her principal summary judgment brief, Plaintiff primarily cites Title IX[17] deliberate indifference cases, not Title VII or equal protection cases. (Doc. No. 123 at 20-23.) However, in citing to and quoting from those Title IX cases, Plaintiff omits any reference to Title IX, and, in at least one instance, uses ellipses to scrub a reference to Title IX from the middle of a quoted sentence. (Doc. No. 123 at 21 (quoting *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)). In addition, she made no effort to explain how Title IX might apply in this case. (Doc. No. 108 at 22-25.) More to the point, Plaintiff did not cite Title IX in her Complaint, nor did she do so in the parties' joint stipulations. As reflected in their briefs, Defendants have not understood Count Eight to be a Title IX claim.

Upon consideration of the Complaint, the parties' joint stipulation, and the parties' briefs, the Court concludes that Count Eight is not a Title VII or Title IX claim. Rather, Count Eight is a claim by way of 42 U.S.C. § 1983[18] that Defendants violated the

---

[17] Title IX of the Education Amendments of 1972, Pub.L. 92–318, 86 Stat. 373, as amended, 20 U.S.C. §§ 1681, *et seq*., generally prohibits a recipient of "Federal financial assistance" from subjecting any person to discrimination "on the basis of sex." 20 U.S.C. § 1681; *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

[18] In her Complaint and on summary judgment, Plaintiff does not plead § 1983 as the basis of Count Eight. However, § 1983 creates a civil action for deprivation of rights afforded by the United States Constitution, and, in Count Eight, Plaintiff is seeking monetary and injunctive remedies for alleged violation of her constitutional rights. 42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (holding that § 1983 is not an independent source of substantive rights, but merely serves a vehicle for vindicating federal rights conferred by the Constitution or other federal law). Defendants understand Count Eight to be a § 1983 claim, so there is no prejudice to Defendants by generously construing Count Eight as one arising under § 1983. (Doc. No. 131-1 at 52.)

Fourteenth Amendment equal protection guarantee against sex discrimination in public employment by being deliberately indifferent to Plaintiff's September 16, 2016 harassment complaint and to ongoing sexual harassment after that date. *Cf. Perkins v. Holder*, No. CV-11-RRA-03679-S, 2012 WL 13042709, at *12 (N.D. Ala. July 2, 2012) ("Count Two alleges 'deliberate indifference and failure to prevent violation of Title VII rights.' The 'deliberate indifference' language, usually used in [§] 1983 claims against municipalities, makes this count also appear to be a [§] 1983 claim.").

## 2. Deliberate Indifference/Fourteenth Amendment Equal Protection Claim Against MCBOE

"The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination" at the hands of the government. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007); *see Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in [evaluating a § 1983 claim] is to identify the specific constitutional right allegedly infringed."). Plaintiff argues that MCBOE violated her Fourteenth Amendment equal protection right to be free from sexual discrimination in the public workplace by being deliberately indifferent to sexual harassment after Plaintiff notified MCBOE about it on September 16, 2016.[19] (Doc. No. 108 at 22-25; Doc. No. 123 at 20-22.)

To prevail on her § 1983 claim, Plaintiff must show that (1) by being deliberately indifferent to known sexual harassment, MCBOE deprived Plaintiff of her Fourteenth

---

[19] Plaintiff does not allege that any Defendant was deliberately indifferent to sexual harassment before September 16, 2016, when she reported the harassment to Defendant Nelson and Assistant Principal Williams.

Amendment right to be free from sex discrimination in the public workplace, and (2) that MCBOE deprived her of that right while acting under color of state law. 42 U.S.C. § 1983.

As explained in detail in Section VI.D. of this Memorandum Opinion and Order, Plaintiff submitted no substantial evidence from which a reasonable factfinder could conclude that Johnson continued to subject Plaintiff to sexual harassment after September 16, 2016, when MCBOE first learned of Plaintiff's allegations against Johnson and immediately initiated its investigation and response. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (holding that "[a] 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Moreover, Plaintiff never reported to administration the three brief interactions she had with Johnson after September 16, 2016, nor has she provided any evidence to indicate MCBOE should have otherwise known about or anticipated those interactions. (Doc. No. 108 at 6.) *See Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) (holding that a school board had no § 1983 equal protection liability where the plaintiff did not present sufficient evidence to satisfy the deliberate indifference standard under § 1983, which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a *known or obvious consequence* of his action.'" (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added)).

Therefore, Plaintiff has not met her burden to provide substantial evidence that MCBOE's actions after learning of the sexual harassment complaint constituted deliberate indifference or deprived her of her Fourteenth Amendment equal protection right to be free from discrimination on the basis of her gender. MCBOE is entitled to judgment as a matter

of law on Plaintiff's § 1983 equal protection claim. *Cf. Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that a school superintendent was not liable for the plaintiff's § 1983 equal protection claim because there was no evidence that the plaintiff suffered "further sexual abuse" at school after the superintendent learned of the abuse).

### 3. Fourteenth Amendment Equal Protection Claim Against All Defendants Other Than MCBOE

All Defendants except MCBOE allege that the § 1983 equal protection claims against them in their official capacities are due to be dismissed as duplicative of Plaintiff's Fourteenth Amendment claims against MCBOE. Plaintiff argues that her official capacity claims are necessary so that the court can afford complete injunctive relief. However, Plaintiff has not identified any injunctive relief that requires the presence of any official capacity Defendant in addition to MCBOE. Nor has Plaintiff provided substantial evidence of an equal protection deprivation after Defendants first learned of and responded to her harassment complaint,[20] as would be necessary for her to recover relief of any kind under Count Eight of the Complaint. Accordingly, Plaintiff's official capacity claims against all Defendants except MCBOE are due to be dismissed. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). *Cf. Zachery v. Coosa Cnty. Bd. of Educ.*, No. 2:18-CV-982-ECM, 2019 WL 4054965, at *3 (M.D. Ala. Aug. 27, 2019) (rejecting the plaintiff's argument that potential equitable relief justified official capacity claims against a school system

---

[20] *See* Section VI.G.2. of this Memorandum Opinion and Order.

superintendent and dismissing those claims as duplicative of claims against the school board).

All Defendants other than MCBOE argue that they are entitled to qualified immunity on Plaintiff's personal capacity Fourteenth Amendment equal protection claims. "So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects" that official "not only from civil liability, but also from suit and its concomitant burdens." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

On summary judgment, a two-part analysis is used for analyzing the applicability of a public official's qualified immunity defense. *Ansley v. Heinrich*, 925 F.2d 1339, 1346 (11th Cir. 1991). First, "the public official must prove that he was acting within the scope of his discretionary authority when the wrongful acts alleged occurred." *Id*. In this case, the parties have stipulated "that the individual Defendants were acting within the scope of their discretionary authority" with respect to the allegations in Count Eight. (Doc. No. 108 at 25.) Second, once the public official establishes that he or she was acting within the scope of his or her discretionary authority, the burden shifts to the plaintiff to "prove that the official's conduct violated clearly established law." *Id*.

In response to Defendants' uncontradicted showing that they were acting within their discretionary authority, Plaintiff has raised no argument; thus she has not even attempted to satisfy her burden to overcome the qualified immunity defense. Moreover, in the parties' joint stipulations, the parties agreed that, with respect to Count Eight, the "clearly established constitutional right" at issue was the "right to be free from sexual

harassment in [Plaintiff's] employment." (Doc. No. 108 at 25.) As explained in Sections VI.D. and VI.G.2. of this Memorandum Opinion and Order, Plaintiff has not provided substantial evidence that she was subjected to sexual harassment in the workplace after she notified Defendants about the harassment on September 16, 2016. Because Plaintiff has not demonstrated that Defendants' conduct caused any violation of her "clearly established" right to be free from sexual harassment in the workplace, Plaintiff has not met her burden to overcome the qualified immunity defense in this case.

Therefore, the individual capacity claims against all Defendants other the MCBOE are due to be dismissed on grounds of qualified immunity.

## H.     State Law Claims: Negligence and Wantonness (Counts Nine and Ten)

In her Complaint (Counts Nine and Ten), Plaintiff alleges that Defendants[21] negligently and wantonly failed to follow MCBOE's own sexual harassment policies and failed to adequately investigate, prevent, remedy, and correct the sexual harassment by Mr. Johnson.[22] (Doc. No. 1 at ¶¶ 92-119.)

---

[21] Plaintiff asserts Counts Nine and Ten against all Defendants. However, with the likely exception of Defendants MCBOE, Johnston, and Nelson, she has not articulated what specific conduct gives rise to her claims under Counts Nine and Ten.

[22] In her Complaint and in her own initial summary judgment brief, Plaintiff frames her negligence and wantonness claims around the handling of her sexual harassment complaint. (Doc. No. 1 at ¶¶ 92-119.) However, in the parties' joint stipulations and in her response to Defendants' motion for summary judgment, Plaintiff also asserts that Defendants negligently and wantonly failed to comply with MCBOE and federal FMLA policies and procedures. (Doc. No. 108 at 25-26; Doc. No. 130 at 11.) Because Plaintiff made no allegation in her complaint of negligent and wanton failure to comply with FMLA law and MCBOE FMLA policies, and because Plaintiff has not provided any legal authority establishing that Alabama places a common law duty on employers to follow the FMLA and their own FMLA policies, the Court does not consider Plaintiff to have asserted tort claims for negligent and wanton violation of the FMLA or MCBOE's FMLA policies.

At the outset, the Count Nine and Ten official capacity claims against defendants Ann Roy Moore, Robert Porterfield, Lisa Keith, W. Durden Dean, Eleanor Dawkins, Mary Briers, Melissa Snowden, Arica Watkins-Smith, Patrick Nelson, and John Johnston are due to be dismissed. As explained in Section VI.G.3. of this Memorandum Opinion and Order, those claims are duplicative of Plaintiff's claims against MCBOE. *See Hinson v. Holt*, 776 So. 2d 804, 810 (Ala. Civ. App. 1998) ("'Claims against officers in their official capacity are 'functionally equivalent' to claims against the entity they represent.'" (quoting *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1403 (M.D. Ala.1998))).

> To state a negligence cause of action, a plaintiff must allege four elements: (1) duty; (2) breach; (3) causation; and (4) damages. *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). To state a wantonness cause of action, a plaintiff must allege "that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty .... [and] that act or omission must proximately cause the injury of which the plaintiff complains." *Id.*

*Ellis v. Advanced Tech., Servs., Inc.*, No. 3:10-CV-555-WHA, 2010 WL 3526169, at *4 (M.D. Ala. Sept. 3, 2010).

Defendants argue that Plaintiff has failed to establish that they had a common law duty under Alabama law to comply with its own harassment policies and to prevent, remedy, and correct the harassment.[23] Plaintiff has failed to come forward with any argument or legal authority on this point. Further, as Defendants point out, Plaintiff has failed to cite any evidence that she was injured because of any failure on their part to comply with Title VII and MCBOE policy or to adequately investigate, prevent, remedy,

---

[23] Plaintiff does not allege that Defendants negligently or wantonly supervised Johnson.

or correct the sexual harassment. As explained in Section VI.D. of this Memorandum Opinion and Order, Plaintiff has not provided substantial evidence that she was subjected to sexual harassment in the workplace after she reported that harassment on September 16, 2016. Thus, the evidence establishes that Plaintiff was *not* injured by Defendants' alleged failure to follow Title VII or MCBOE policy or investigate and remedy the situation.

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's negligence and wantonness claims (Counts Nine and Ten).

## VII.   CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, it is ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. No. 123) is DENIED.

2. Defendants' motion for summary judgment (Doc. No. 125) is GRANTED.

3. Defendants' motion to amend their summary judgment brief (Doc. No. 131) is GRANTED.

4. All of Plaintiff's claims against Defendant Montgomery County Board of Education are dismissed with prejudice.

5. Counts One, Two, Three, Four, Five, Six, and Seven are dismissed without prejudice as to Defendants Ann Roy Moore, Robert Porterfield, Lisa Keith, W. Durden Dean, Eleanor Dawkins, Mary Briers, Melissa Snowden, Arica Watkins-Smith, Patrick Nelson, and John Johnston, in their official and individual capacities.

6. Counts Eight, Nine, and Ten are dismissed with prejudice as to Defendants Ann Roy Moore, Robert Porterfield, Lisa Keith, W. Durden Dean, Eleanor Dawkins,

Mary Briers, Melissa Snowden, Arica Watkins-Smith, Patrick Nelson, and John Johnston, in their official and individual capacities.

7. A separate judgment shall issue.

   DONE this 21st day of October, 2022.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE